**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

*In re:*

HARRY GREENHOUSE,

       Debtor.                          /

Chapter 11

Case No.: 21-12844-AJC

## DEBTOR'S RESPONSE IN OPPOSITION TO POLYCHAIN'S
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY [ECF# 27]

HARRY GREENHOUSE (the "Debtor" or "Greenhouse"), by and through undersigned counsel, files this response in opposition to Creditors', Polychain Fund I LP and Polychain Partners, LLC f/k/a Polychain 2030, LLC (together, "Polychain") *Motion for Relief from the Automatic Stay* [ECF# 27] (the "Motion"), and in support thereof, states as follows:

## I.      SUMMARY OF THE ARGUMENT

Polychain effectively seeks abstention by this Court of its core jurisdiction over the matters raised in the Motion. Polychain seeks this abstention without invoking 28 U.S.C. §1334 and the significant hurdles that statute presents by disguising its requests as a motion for stay relief. The Motion seeks three different kinds of relief. First, the Motion seeks leave to confirm the monetary portion of the Arbitration Award. Liquidating claims of creditors is at the very heart of this Court's core jurisdiction, and the relief sought by Polychain is unnecessary. While Polychain can accomplish what it seeks by simply filing a proof of claim, the Debtor does not oppose Polychain incurring further, unnecessary fees to liquidate its prior fee award. However, as a fiduciary for all creditors, the Debtor very much opposes Polychain using confirmation of its prior fee award to seek amounts in excess of those previously awarded, or to materially improve Polychain's position as an unsecured creditor in this case. As will be explained below, based on



Polychain's tendency to abuse process, this estate is likely better off if this portion of the Motion is denied.

Next, Polychain's Motion seeks relief to go to another forum to obtain an injunction to prevent the Debtor from disclosing Polychain's confidential information.  The Debtor vehemently disputes that he ever disclosed Polychain's confidential information.  This Court has subject matter jurisdiction and personal jurisdiction over the Debtor and therefore, the Debtor will agree to be bound by such an injunction issued by _this_ Court,[1] but leaving Polychain to its own devices in California State Court (defined below) will likely lead to adverse consequences for this estate.

Finally, in a disguised attempt at abstention, Polychain seeks leave to pursue declaratory relief in the Superior Court of the State of California, County of San Francisco (the "California State Court") confirming that its tax and accounting practices are consistent with applicable federal tax statutes and regulations and that the Debtor is not entitled to any additional tax related information from Polychain.  If successful, Polychain will no doubt attempt to use such declaratory relief to try and prevent the Debtor from pursuing a large refund from the Internal Revenue Service (the "IRS"), a refund which, if granted, will materially enhance distributions to creditors, including Polychain.  Polychain, however, is less motivated by its own interests in this case than by the consequences such a refund may have with the IRS.  This Court has the jurisdiction and authority to accomplish all that Polychain seeks from the California State Court, and should exercise that authority in the interests of all creditors, not just Polychain.

---

[1] In order to accomplish such an injunction the Debtor agrees to waive the requirements for injunctive relief under F.R.B.P. 7001, et seq and Rule 65, F.R.Civ.P.



**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

## II.   **FACTUAL BACKGROUND**

1.      In 2017, Greenhouse was one of the first investors, as a Limited Partner, in Polychain, an entity which invests in protocols and companies in the digital asset and cryptocurrency space.

2.      The Debtor began to have concerns about Polychain's accounting and tax practices, and withdrew his investment. When he withdrew, the Debtor requested to examine Polychain's books and records for tax purposes. Polychain refused, and the Debtor initiated a proceeding in Delaware (Polychain's state of incorporation) to compel inspection of the books and records. This effort was unsuccessful on the basis that the Debtor had withdrawn his investment, was no longer a limited partner, and therefore did not have standing to seek the records.

3.      In retaliation, Polychain initiated a JAMS arbitration in California in September of 2018 (the "Arbitration").  In that Arbitration, Polychain accused the Debtor of providing confidential material for an article that had previously appeared in the Wall Street Journal.[2] Based on this accusation, Polychain sought an injunction and monetary damages. The Debtor counter-claimed for declaratory relief regarding Polychain's treatment of its investors who sought redemption of their investments from a valuation and tax standpoint.  Nothing that occurred in the Arbitration could bind the Internal Revenue Service (the "IRS"), of course, as they were not, and could not, be named as a party to the Arbitration.  Nor could the arbitrator preclude the Debtor from obtaining records relevant to any matter between the Debtor and the

---

[2] *Olaf Carlson-Wee Rode the Bitcoin Book to Silicon Valley Riches. Can He Survive the Crash.*
https://www.wsj.com/articles/olaf-carlson-wee-rode-the-bitcoin-boom-to-silicon-valley-riches-can-he-survive-the-crash-1536681364



IRS. Yet, that is precisely what Polychain hopes to accomplish in seeking the stay relief requested in the Motion.

4.     The arbitrator found that Polychain had the discretion to value its assets as it saw fit to do so. The Arbitrator also found it permissible for Polychain to engage in a practice called "aggregate account" also colloquially referred to as "Gain Stuffing". This allowed an investor who was redeeming an interest to be allocated the entire profit it had made as short-term capital gains, rather than a mix of both long-term and short-term gains, depending on the entity's transactions. This practice permitted an identically situated investor, who had made an investment at the same time but had not redeemed their interest, to receive an entirely different K-1, which allocated no gains or losses for the year (and thus, entirely different tax liabilities).

5.     In a now familiar refrain, and during the Arbitration, Polychain accused the Debtor of hiding certain information. The Debtor disputed he was doing so. In a highly unusual turn of events, while the arbitrator eventually found for Polychain on the non-monetary claims, the arbitrator entered a sanctions award against Polychain in the amount of $29,872.92 for falsely accusing the Debtor of hiding discovery and committing discovery violations of its own[3]. While the Debtor hoped that Polychain had learned in that process to be careful with its accusations, the tone and content of the Motion make the Debtor less than sanguine in that regard.

6.     Although the arbitrator found that the Debtor was not in breach of the covenant of good faith and fair dealing, the arbitrator also found that the Debtor was not entitled to any additional tax related information from Polychain, and that Polychain's tax and valuation methodology of treating limited partners was consistent with and permissible under relevant laws

---

[3] Referencing a September 11, 2020 order awarding sanctions in the Arbitration in favor of the Debtor. A lengthy prior order was issued on August 10, 2020 which described Polychain's sanctioned discovery violations during the Arbitration in detail. ("…Polychain volunteered that it withheld documents from production for reasons that the Arbitrator finds deeply troubling.") *See* page 3 of August 10, 2020 order.

4



**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

and regulations. Although the arbitrator denied Polychain's request for damages, the arbitrator found Polychain to be a prevailing party under Section § 10.19 of its Limited Partner Agreement and awarded attorney's fees and costs in the amount of $4,173,141.25 (the "Arbitration Award").

7.    Before making the fee award, the arbitrator entered an interim order requiring Greenhouse to certify under oath that he neither possesses nor has access to Polychain's confidential information. Greenhouse readily complied as he had not been associated with Polychain since 2017.

8.    After weighing his options of proceeding with a challenge to the Arbitration Award, and with uncertainty over whether the debt limits under the Coronavirus Aid, Relief, and Economic Security (CARES) Act would be extended, Greenhouse decided his best course was to seek bankruptcy protection.

### III.    RESPONSE IN OPPOSITION

#### A.    *Polychain Articulates No Basis for "Cause" for Stay Relief.*

9.    The decision to either grant or deny stay relief is a highly factual and case specific inquiry. *See In re Rothstein Rosenfeldt Adler, P.A.*, Case No. 09-34791-RBR, 2011 Bankr. LEXIS 591, at *5 (Bankr. S.D. Fla. Jan. 24, 2011).  Such a decision is within the discretion of this Court. *Id.* (citing *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989)).

10.    Polychain seeks stay relief for "cause" under § 362(d)(1) which provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

11  U.S.C. § 362(d)(1).

5



11.    Polychain is an unsecured creditor and therefore issues of adequate protection, equity and whether property is necessary for reorganization are simply not implicated in the Motion.  This leaves Polychain with the burden of establishing other "cause."

12.    The Bankruptcy Code does not define "cause" for relief from stay.  Because the circumstances surrounding the grant or denial of stay relief are so fact specific, broad, general pronouncements about the holding of a particular case are of little use without a discussion of the facts relied upon by the court in arriving at such a holding.  Such a discussion is missing from the Motion, and for good reason.

13.    Polychain leads with its chin by touting the *Sonnax*[4] factors as a basis for granting stay relief.  Contrary to Polychain's claim that "courts in this Circuit consider the factors identified in *Sonnax*…" there is no reported decision within the 11th Circuit that the Debtor could find that is binding upon this Court that actually stands for that proposition.

14.    Then there is the holding of *Sonnax* itself, which actually ___**denied**___ stay relief to the creditor who sought it there at every level, all the way up to the Second Circuit.  Even if the Court were somehow bound by *Sonnax* or required to give it persuasive weight, the enunciated factors actually militate against stay relief here.

15.    *Montague* is another S.D.N.Y. case that Polychain asserts in support of stay relief. Both *Montague* and this case involve protracted and hard fought arbitrations. Aside from this unremarkable similarity, however, the facts of *Montague* could not be more different.   In *Montague,* the Debtor removed the pending arbitration to the bankruptcy court on the eve of confirmation of the arbitration award.  The movant there sought remand and stay relief.  The

---

[4] *Sonnax v. Tri-Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990

6



**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

analysis of the *Montague* court hinged upon the prejudice to both the debtor and movant based upon the debtor's contention that the parties would be required to re-litigate many issues when the arbitration there was pending for 16 months.

16.     That is not at all the case here.  The Debtor has not removed the Arbitration to this Court.  The Debtor is not suggesting that this Court relitigate any issues that have been resolved by the Arbitration.  On the contrary, the Debtor is simply seeking to preserve its right to pursue, and to obtain discovery from Polychain supporting, a valuable claim to recover tax overpayments from the IRS for the benefit of the Debtor's creditors.

> **B.**     ***"Cause" Requires Examination of the Totality of the Circumstances, and Those Circumstances Weigh Against Stay Relief.***

17.     Polychain principally frames its argument for full and complete relief under the twelve-factor test articulated in *Sonnax*, and argues that all factors weigh in favor of relief from the automatic stay. The so-called *Sonnax* factors have not been adopted by this Circuit, but do provide an interesting factual rubric of what the Second Circuit examined in, again, ***<u>denying</u>*** stay relief to the creditor in that case.

18.     In affirming the district court's denial of stay relief the Second Circuit found that only four of the so-called *Sonnax*[5] factors were relevant: (1) whether the New York state-court proceeding was connected to or might interfere with the bankruptcy case; (2) whether the bankruptcy petition was filed in bad faith; (3) the balance of harms; and (4) the interests of judicial economy and the expeditious and economical resolution of litigation.

19.     The Second Circuit held that, with respect to the first factor, it was "undeniable" that the state-court proceeding is connected to, and would interfere with, the bankruptcy case.

---

[5] The Second Circuit actually referred to them as the Curtis factors, for *In re Curtis,* 40 B.R. 795 (Bankr. D. Utah 1984)



**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

20.    Courts routinely hold that a creditor's remedy against Chapter 11 debtors – adjudication and distribution upon the filing of a proof of claim – is adequate. *See*, *e.g.*, *In re Northwest Airlines Corp.*, Case No. 05-17930, 2006 Bankr. LEXIS 300, at *5 (Bankr. S.D.N.Y. Jan. 12, 2006) ("[t]he movants would suffer little hardship from a denial of their motion, as their claim for monetary damages is at best a prepetition claim in the Chapter 11 cases.").  This is what Polychain should do here instead of engaging in the wasteful exercise of having a state court in California affirm an unsecured claim.

21.    The Second Circuit held that the movant in *Sonnax* could not avail itself of the next factor, whether the bankruptcy petition was filed in bad faith, because there was no evidence of bad faith. So too here; Polychain cannot point to any evidence of bad faith. Indeed, in support of this factor, Polychain relies on the Debtor's conduct in filing the bankruptcy petition, yet, as the Second Circuit itself pointed out, a bankruptcy filing intended in part to gain relief from the state court action does not necessarily constitute bad faith.

22.    The Second Circuit found that the third factor, the balance of harms, supported a denial of stay relief. Here, the Debtor has no intention of challenging the amount of the attorneys' fee award entered in the Arbitration. The Debtor has already stipulated above to the injunctive relief being sought by Polychain in this Court, and the declaratory relief that Polychain seeks in California State Court cannot, as a matter of law, bind the Debtor from performing its fiduciary obligation of seeking a tax refund, a refund that will substantially enhance distributions to unsecured creditors in this estate.

23.    The fourth factor, the interests of judicial economy and the speedy and economical determination of litigation, here as in *Sonnax*, supports denial of stay relief.  Sub-Chapter V of Chapter 11 was specifically designed by Congress for the speedy and efficient

8

reorganization of debtors[6] and the Debtor voluntarily and fully submitted himself to the jurisdiction of this Bankruptcy Court. As a result, this is the only Court with jurisdiction over all the interested parties and assets of the Debtor.

### C.    *Polychain Cannot Use Stay Relief as a Shortcut to Abstention.*

24.    Schedule B, #28 of the Debtor's Schedules and Statement of Financial Affairs [ECF #35] reflects that the Debtor has a filed a Form 8082 Notice of Inconsistent Treatment or Administrative Adjustment Request (AAR) for a tax overpayment in the year 2017, which was the underlying cause of the Polychain litigation (the "2017 Tax Refund"). The 2017 tax refund is estimated to be between $700,000 - $1,300,000. The Debtor is also owed a tax refund for 2013 in the amount of $87,457.00. Liabilities are owed to the IRS for 2019 in the amount of $26,595.00 and $424,625.00 for the year 2020. Accordingly, the Debtor's claims from and against the IRS are not inconsequential to this Estate and its creditors, including Polychain.

25.    After failing to receive an answer to the Form 8082 during the obligatory six month response period, the Debtor is now contemplating an action against the IRS.

26.    Polychain seeks confirmation in the California State Court of declaratory relief that its tax and accounting practices are consistent with applicable federal tax statutes and regulations and that the Debtor is not entitled to any additional tax related information from Polychain.  As such, the requested stay relief is clearly intended to circumvent the Debtor's rights under his Form 8082 and right to seek a refund, contrary to the arbitrator's admitted lack

---

[6] "With SBRA, "Congress intended to streamline the reorganization process for small business debtors because small businesses have often struggled to reorganize under chapter 11." Michael J. Lichtenstein & Michael L. Bernstein, Eligibility As A Debtor Under SBRA, Am. Bankr. Inst. J., April 2021, at 18, 18 *citing In re Penland Heating & Air Conditioning Inc.*, 2020 WL 3124585, at *1 (Bankr. E.D.N.C. June 11, 2020) (*slip op.*) (citation omitted); *see also In re Bonert*, 619 B.R. 248, 252 (Bankr. C.D. Cal. 2020).

9



of authority to determine the rights and obligations between the Debtor and the IRS, and it would

be highly prejudicial to the Estate and its creditors.

27.    If the Debtor succeeds in recovering his tax overpayments, the Estate stands to

receive a significant source of additional funding, offset by existing liabilities, for the benefit of

the creditor body. However, since Polychain was the Debtor's major source of income in 2017, a

determination on the Debtor's Form 8082 will likely involve a review by the IRS of Polychain's

internal accounting practices.  Avoiding this review is clearly Polychain's motivation in seeking

stay relief.  Seeking a post-petition declaratory judgment that would purportedly bar the Debtor

from accessing these records from Polychain, due to an arbitrator's decision in an action where

the IRS was never a party, would be highly prejudicial to the Estate's potential recovery of the

much needed tax refunds. Even the arbitrator questioned the scope and effect of his decision

upon Greenhouse's ability to seek a refund from the IRS.

28.    The Debtor's ability to recover tax overpayments from the IRS, or its ability to

obtain from Polychain any and all discovery relevant to that action cannot, as a matter of law, be

affected by confirmation of the Arbitration Award.  Indeed, an order confirming the Arbitration

Award could not have any preclusive effect because, among other things, the issues and causes

of action would be different.  *See, e.g.*, *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th

Cir. 2001) ("Res judicata may be properly applied only if certain prerequisites are met.  In the

Eleventh Circuit, . . . both cases must involve the same causes of action."); *Harvey v. United

States*, 770 F. App'x 949, 954 (11th Cir. 2019) (quoting *Baloco v. Drummond Co.*, 767 F.3d

1229, 1251 (11th Cir. 2014)) ("For issue preclusion to apply, . . . the issue in the case must be

identical to the one previously litigated . . . [and] 'the determination of the issue in the prior suit

[must have been] a necessary part of the judgment in that action' . . . .").

10

29.     It would appear, however, that Polychain is seeking stay relief for the purpose of preventing or hindering any effort by the Debtor to recover his tax overpayments so as to protect its own tax practices from scrutiny by the IRS.

### IV.     CONCLUSION

30.     Polychain has placed no facts, let alone law, that establish "cause" under Bankruptcy Code § 362(d)(1) for complete relief from stay. The automatic stay and other provisions of the Bankruptcy Code provide the Debtors a single, centralized and efficient forum for the liquidation and treatment of claims—such as the Arbitration Award. Lifting the stay to permit a state court in California to award injunctions and declaratory relief over matters directly affecting the administration of this Estate would not only be wholly improper, but would potentially frustrate administration, risk inconsistent or incorrect results, increase costs and delays, and likely diminish creditor distributions. Lastly, this Bankruptcy Court is more than suited to resolve all matters requested by Polychain due to its plenary powers and jurisdiction over all parties and issues raised in the Motion. In such circumstances, the Debtor respectfully submits that there can be no showing of "cause" to lift the stay for matters more properly before this Court.

**WHEREFORE**, for all the foregoing reasons, the Debtor respectfully requests the Court enter an Order denying the Motion and granting such other and further relief to the Debtor that the Court may deem just and proper.

11

AGENTIS PLLC
***Counsel for Debtor In Possesion***
55 Alhambra Plaza, Suite 800
Coral Gables, FL  33134
T. 305.722.2002
www.agentislaw.com

By:    */s/ Robert P. Charbonneau*
           Robert P. Charbonneau
           Florida Bar No: 968234
           rpc@agentislaw.com
           Nicole Grimal Helmstetter
           Florida Bar No: 86937
           ngh@agentislaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case on April 19, 2021.

By:    */s/ Robert P. Charbonneau*
           Robert P. Charbonneau
           Florida Bar No: 968234
           rpc@agentislaw.com

12