

**ORDERED in the Southern District of Florida on December 21, 2023.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:                                          Case No. 21-12844-RAM

HARRY B. GREENHOUSE,                            Chapter 11

     Debtor.
_____/

**ORDER CONFIRMING THE DEBTOR'S**
**SUBCHAPTER V PLAN FOR REORGANIZATION AND SETTING**
**ADMINISTRATIVE BAR DATE**

This matter came before the Court for hearing on December 19, 2023 at 9:30

a.m. to consider confirmation of the Revised Fourth Amended Chapter 11 Subchapter

V Plan of Reorganization (the "Plan") (ECF #780) filed on November 30, 2023 by the

Debtor, Harry Beck Greenhouse.  The Court has reviewed the evidence presented and

the record of this case, including: (i) the confirmation affidavit of the Debtor (ECF

#881), (ii) the Certificate of the Debtor's counsel (ECF #809), and (iii) the testimony of the Debtor, the exhibits received into evidence, and the stipulations placed on the record by counsel. Having considered the evidence presented, the arguments of counsel, and being otherwise fully advised in the premises, after notice and a hearing, the Court finds and concludes as follows:

## FINDINGS OF FACTS & CONCLUSIONS OF LAW

A.    **Jurisdiction**.    The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, the United States District Court's general order of reference, and other various applicable provisions of the Bankruptcy Code[1] and the Federal Rules of Bankruptcy Procedure ("FRBP").

B.    **Venue**.    Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

C.    **Notice**.    Due, adequate, and sufficient notice of the Plan and the order setting a hearing on confirmation (Doc. #774) were served upon all creditors, interest holders, and parties requesting notice.    Accordingly, the method of service and solicitation of acceptance of the Plan, notice of the hearing to consider confirmation of the Plan, and notices of all other deadlines or requirements relating thereto (collectively, the "Confirmation Deadlines") were in compliance with the FRBP, were adequate and reasonable under the circumstances of this case, and no further or additional notice of the confirmation hearing or the confirmation deadlines was necessary or required.

---

[1] The term "Bankruptcy Code" refers to the applicable section(s) of 11 U.S.C. § 101, *et. seq.* unless otherwise indicated.

D. **Objections to Confirmation**.  Present at the hearing were the Subchapter V Trustee Linda Leali, counsel for Polychain Melissa Ginsberg and James Moon, and Steven Schneiderman of the Office of the U.S. Trustee.  Both Polychain (ECF #802) and the Subchapter V Trustee (ECF #800) filed limited objections to confirmation.  All of said objections were resolved by stipulations on the record and are therefore overruled as moot.

E. **Change of Polychain Vote**.  Polychain has changed its rejecting vote to an accepting vote in support of the Plan.

F. **Proper Classification of Claims – 11 U.S.C. §§ 1122 and 1123**.  The Plan adequately and properly identifies and classifies all claims.  Pursuant to 11 U.S.C. § 1122(a), the claims placed in each class are substantially similar to other claims in each such class.  Pursuant to 11 U.S.C. § 1123(a)(1), valid legal and business reasons exist for the various classes of claims created under the Plan and such classification does not unfairly discriminate among holders of claims. The classification of claims in the Plan is reasonable.

G. **Specified Unimpaired Classes – 11 U.S.C. § 1123(a)(2)**.  The Plan specifies all classes or claims or interests that are not impaired under the Plan.

H. **Specified Treatment of Impaired Classes – 11 U.S.C. § 1123(a)(3)**. The Plan specifies the treatment of all classes of claims or interests that are impaired under the Plan.

I. **No Discrimination – 11 U.S.C. § 1123(a)(4)**.  The Plan provides for the same treatment of claims or interests in each respective class unless the holder

of a particular claim or interest has agreed to a less favorable treatment of such claim or interest.

      J.    **Implementation of the Plan – 11 U.S.C. § 1123(a)(5)**.  Article III (beginning at page 40) of the Plan provides adequate means for the Plan's implementation.

      K.    **Interests of the Creditors, Equity Security Holders, & Public Policy – 11 U.S.C. § 1123(a)(7)**.  The Plan contains only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of the Trustee (of the Trust) under the Plan (the "Plan Trustee" and the "Plan Trust", respectively) and any successor to such trustee.

      L.    **Assumption & Rejection – 11 U.S.C. § 1123(b)(2)**.  Article V of the Plan, pursuant to § 365 of the Bankruptcy Code, provides for the assumption, rejection, or assignment of any executory contract or unexpired lease of the Debtor not previously rejected under such section.

      M.    **Additional Plan Provisions – 11 U.S.C. § 1123(b)(6)**.  Each of the provisions of the Plan is appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

      N.    **Principal Purpose of the Plan – 11 U.S.C. § 1129(d)**.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

O.    **Subchapter V Plan Requirements – 11 U.S.C. § 1189**.  The Plan complies with § 1189 because the Debtor's initial Plan was filed by the Debtor not later than 90 days after the order for relief under Chapter 11, and subsequent Plans were filed with leave of Court.

P.    **Contents of a Subchapter V Plan – 11 U.S.C. § 1190**.  In compliance with § 1190, the Plan includes: (1) a brief history of the business operations of the debtor, (2) a liquidation analysis, and (3) projections with respect to the ability of the Debtor to make payments under the proposed plan for reorganization.  The Plan provides for the submission of the Debtor's cash on hand, certain loan proceeds, and the Debtor's designated Investment Assets[2], to fund the Plan and Plan Trust as is necessary for the execution of the Plan.

Q.    **Satisfaction of Conditions – 11 U.S.C. § 1191(a)**. The Court finds that, the Plan satisfies the applicable requirements of 11 U.S.C. § 1129(a), and is fair and equitable.  As a result, the Plan is confirmed under § 1191(a). With respect to the applicable provisions of § 1129(a), the Court finds and concludes as follows:

1.    **11 U.S.C. § 1129(a)(1) and (a)(2)**.  The Plan and the Plan proponent comply with the applicable provisions of the Bankruptcy Code.

2.    **11 U.S.C. § 1129(a)(3)**.  The Plan was proposed in good faith and not by any means forbidden by law.

3.    **11 U.S.C. § 1129(a)(4)**.  Any payment made or to be made by the Debtor, for services or for costs and expenses in or in connection with the case,

---

[2]    Capitalized terms not defined herein shall have the meaning set forth in the Plan.

or in connection with the Plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable.

4.     **11 U.S.C. § 1129(a)(5)**.  The Plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a Plan Trustee, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders, and with public policy.

5.     **11 U.S.C. § 364**.  The loan from the Lenders is appropriate under the circumstances and the Terms of the loan are reasonable.

6.     **11 U.S.C. § 1129(a)(7)**.  The Plan provides that, with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

7.     **11 U.S.C. § 1129(a)(9)**.  Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides for the payment of all priority claims pursuant to the applicable subsections of 11 U.S.C. § 507.

8.     **11 U.S.C. § 1129(a)(11)**.  Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial

reorganization, of the debtor or any successor to the debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

9.    **11 U.S.C. § 1129(a)(12)**.  All fees payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payment of all such fees on the effective date of the Plan.

10.    **11 U.S.C. § 1129(a)(14)**.  The Debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  The Debtor has paid or will pay prior to the effective date, all amounts currently payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition. 1129(a)(15)

11.    **Implementation**.  All documents necessary to implement the Plan, including, without limitation, the Plan Trust Agreement (a form of which is attached hereto as Exhibit "A"), and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law. As of the Effective Date of the Plan, the Plan provides that all of the Debtor's cash on hand and designated Investments Assets and loan proceeds will be used to make payments under the Plan.  The Plan Trustee will be able to make all payments required under the Plan, and the Plan provides appropriate remedies, in the event of any default. In addition, to the extent

any additional documentation becomes necessary, the Debtor has agreed, and is hereby ordered, to fully cooperate with the Plan Trust to perfect the transfer of the Investment Assets to the Plan Trust.

    12.   **Plan Trust**.

    a.  On the Effective Date, the Plan Trust will be established according to the terms of the Plan and the Plan Trust Agreement. Upon establishment of the Plan Trust, all Investment Assets shall be deemed transferred to and shall vest in the Plan Trust free and clear of all Liens and Claims without any further action of the Debtor. The Court will enter a separate Order directing the transfer of the Investment Assets consistent with this Order.

    b.  Under section 1141 of the Bankruptcy Code, as of the Effective Date, all Investment Assets shall vest in the Plan Trust and all Assets dealt with in the Plan shall be free and clear of all Liens, Claims, charges or other encumbrances, except as otherwise specifically provided in the Plan or in this Plan Confirmation Order. Upon completion of the transfer of the Investment Assets to the Plan Trust, the Debtor will have no further interest in, or with respect to, the Investment Assets or the Plan Trust.

c.  Linda Leali is appointed as the Plan Trustee.  The Plan Trustee shall have such powers, duties, and responsibilities as is provided for in the Plan and the Plan Trust Agreement and shall be compensated from the Plan Trust in connection with the performance of services as Plan Trustee of the Plan Trust pursuant to section 326 of the Bankruptcy Code as applicable to a chapter 7 trustee. For the avoidance of doubt, the Plan Trustee's compensation shall be treated pursuant to section 330(a)(7) of the Bankruptcy Code.  The Plan Trustee shall be entitled to retain post-confirmation professionals as set forth in the Plan Trust Agreement.

d.  General Authorizations.  The Debtor and the Plan Trustee are authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan.  The Debtor or Plan Trustee, as applicable, may, at the request or direction of the Debtor or Plan Trustee, as applicable, shall from time to time prepare, execute, and deliver any agreements,

documents, instruments, or notices, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.  Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the members, managers, or other owners, direct or indirect, of the Debtor shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) according to applicable law, without any further vote, consent, approval, authorization, or other action by such members, managers, or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.  The Debtor shall fully cooperate with the Plan Trust to execute any additional documents that may be necessary to perfect the transfer of the Investment Assets to the Plan Trust.

13.    **Administrative Expense Claims and Administrative Expense Claims Bar Date.**  To be eligible to receive distributions from the Plan Trust on account of an Administrative Expense Claim that is not otherwise Allowed by the Plan or this Order, a request for payment of an Administrative Expense Claim incurred during the Chapter 11 Case must have been filed on or before January 15, 2024 (the "Administrative Expense Claims Bar Date").  Any Administrative Expense

Claim that is not timely asserted by the Administrative Expense Claims Bar Date shall be deemed disallowed under the Plan and shall be forever barred against the Debtor, the Estate, the Plan Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such Claim.

14.    **Exemptions Under Sections 1145 and 1146.**    Under section 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Plan Trust under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.  In accordance with section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument or transfer from a Debtor to the Plan Trust, or to any other Person under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and all applicable state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any  such tax or governmental assessment.

15.    **Consents and Approvals.**  This Plan Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any State, Commonwealth, or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that

may be necessary or appropriate for the implementation or consummation of the Plan.

      16.   **Modifications.** The parties made the following stipulated amendments and clarifications to the Plan, which the Court hereby adopts:

    a.  The Plan added language regarding the Plan Trustee's possible sale of assets. The Debtor has clarified that said language was added to simply confirm that the Plan Trustee of the Plan Trust has the ability to sell an asset, but the Debtor was not seeking to impose a duty on the Plan Trustee to sell assets.

    b.  While The Subchapter V Trustee raised objections to the effect that the Debtor should be required to provide certain tax basis information to them regarding the assets being transferred into the Plan Trust. The parties have confirmed on the record that said information has now been provided as of December 31, 2022. The Debtor shall provide the basis information for December 31, 2023 in a prompt fashion.

    c.  The transfer of the assets into the Plan Trust shall be deemed effective as of 11:59 p.m. on December 31, 2023.

    d.  The provision added to the Plan regarding the Debtor's ability to review administrative expenses has been

resolved via the Court's ruling on the pending fee applications.

e.  Both The Subchapter V Trustee and Polychain objected to any provision of the Plan that may imply that the discharge would issue prior to the Effective Date.  The Debtor agrees that the discharge will not issue until at least the Effective Date, as set forth below.

f.  Exhibit B to the Debtor's Certificate of Subchapter V Debtor (ECF #809) inadvertently failed to state the amount of Polychain's claim.  The amount of Polychain's claim is $4,173.141.25 .

g.  The Lender's deficiency claim shall be set in the amount of $135,000.00.  Interest on the $135,000.00 deficiency claim shall accrue at 4.82%, which is the Applicable Family Rate set by the IRS for Mid-Term intra-family loans effective as of December 28, 2023, which is the date that proceeds from the Loan shall be distributed pursuant to the provisions in the Plan.  Interest on the deficiency claim shall begin accruing starting one year after the Effective Date.  The Plan Trust shall not be responsible for repayment of any portions of the Loan other than the $135,000.000

deficiency claim and the applicable interest on the deficiency claim.

h. The Plan Trust shall pay towards the Debtor's 2022 and 2023 tax liabilities, as said tax liabilities are set forth in the Debtor's Declaration in Support of Confirmation (ECF #811), and said obligation of the Estate and/or Plan Trust shall be capped in the amount of $75,018.00. In the event Debtor's tax liability for 2022 and 2023 exceeds $75,018.00, the Internal Revenue Service shall look to the Debtor—and not—the Plan Trust—for payment of any additional amounts. If any of said tax payments are refunded to the Debtor, or applied as a credit to a different tax obligation of the Debtor, by the IRS, Debtor shall turn over the refund (or cash in the amount of the refund or credit towards a different tax obligation) to the Plan Trust.

i. As the deficiency amount has now been set, there is no obligation under the Plan for the Debtor to sell or otherwise dispose of the collateral securing the Loan and/or use the proceeds from the sale or receipt of the collateral to pay interest on the loan or pay down the Loan. The use and disposition of the collateral securing the Loan

shall be a matter solely between the Lenders and the
Debtor.

j. Any party in interest may declare a default if a default
occurs prior to the Effective Date.  However, as set forth in
this Court's Order dated November 15, 2023 (ECF #774),
only the Plan Trustee of the Plan Trust may declare a
default once the Effective Date has occurred.  Other parties
may seek to compel the Plan Trustee's action consistent
with the terms of the Plan Trust Agreement.

17.    The parties shall abide by the following deadlines:

a.  December 21, 2023 – The Subchapter V Trustee shall upload
the Confirmation Order and Order Transferring Investment
Assets to Plan Trust.

b.  December 22, 2023 – Debtor to wire sum of $164,000.00 to
AlignX Law in Plan Trust for partial payment of DSO obligation

c.  Prior to December 28, 2023, Lenders shall wire transfer the
amount of $645,000.00 (representing the principal amount of
the Loan) to the IOLTA Account of the law firm of Landsman
Saldinger Carroll, PLLC.

d. December 28, 2023 –

a. Assuming that the Lenders have wire transferred the
principal amount of the Loan as set forth in paragraph

17(c), the law firm of Landsman Saldinger Carroll, PLLC, at the direction of Richard Saldinger, Esq. (counsel for the Lenders) shall wire $338,660.00 to AlignX Law Trust Account for full and final payment of Debtor's lump sum DSO obligation; and shall also wire transfer $306,340.00 to the Plan Trust account designated by the Plan Trustee.  AlignX Law shall release all DSO Obligation funds received from all sources, as detailed above, to Ms. Olivia Sampaio on or before the Effective Date;

b.  All documents required for transfer of Investment Assets shall be executed and delivered to the Plan Trustee;

c.  The Plan Trust Agreement shall be executed and delivered to the Plan Trustee;

d.  The Debtor shall transfer residual funds to Plan Trustee per agreement filed with the Court as an exhibit to confirmation and Exhibit "B" to this Confirmation Order. The Debtor shall have an ongoing obligation to comply with this agreement attached as Exhibit "B" and to deliver funds to the Plan Trustee consistent with the agreement.

e. December 29, 2023 – The Effective Date of the Plan shall deemed to be December 29, 2023.

Accordingly, the Court ORDERS:

1.    **<u>Confirmation.</u>**  The Plan is confirmed under 11 U.S.C. § 1191(a). The documents contained therein are authorized and approved, and the Debtor and Plan Trust are authorized to execute and deliver such documents as are necessary to implement the Plan and/or to cause the Effective Date to occur.  Each provision of the Plan is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan.  The terms of the Plan, as previously modified and as modified by any modifications made at the Plan Confirmation Hearing, are incorporated by reference into and are an integral part of this Plan Confirmation Order.  The failure specifically to describe, include, or refer to any particular article, section, or provision of the Plan or any related document in this Plan Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan and all related documents be approved and confirmed in their entirety as if fully set forth in this Plan Confirmation Order.

2.    **<u>Binding Effect of Plan</u>**.  Pursuant 11 U.S.C. § 1141(a), except as provided in §§ 1141(d)(2) and (3), the provisions of the Plan as of the Effective Date, bind the debtor, the Lenders, and any creditor, whether or not the claim or interest

of such creditor, is impaired under the Plan and whether or not such creditor, has accepted the Plan.

3. **Re-vesting of Property**.   Under 11 U.S.C. § 1141(b), except as otherwise provided in the Plan or in this Confirmation Order, as of the Effective Date, all of the property of the estate not transferred pursuant to the Plan vests in the Debtor.  Except as provided in §§ 1141(d)(2) and (3) and except as otherwise provided in the Plan or in this Order, after confirmation of the Plan, the property dealt with by the Plan is free and clear of all claims and interests of creditors.

4. **Post-Confirmation Operation of Business**.  Except as otherwise provided in the Plan or in this Confirmation Order, on and after the Effective Date, the Debtor may operate his business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provisions of the Bankruptcy Code.  The Debtor is entitled to retain and compensate professionals without the necessity of further approval of this Court.

5. **Injunction and Discharge**. As the Plan is confirmed under section 1191(a), the Debtor shall receive his discharge by agreement as follows:

    a. The Debtor shall receive his discharge promptly after: (i) the Debtor's transfer of his Investment Assets and cash on hand for use under the Plan, (ii) payment of the DSO obligation, and (iii) the transfer of the loan proceeds from the Exit Financing, as required under the Plan and Plan Trust Agreement.  The Court

shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of the Bankruptcy Code, and all other debts allowed under Section 503 of the Bankruptcy Code and provided for in the Plan. The Debtor will not be discharged from any debt excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. Any and all debts or obligations owed to Ms. Sampaio arising out of or under the Amended Dissolution Judgment, including the equitable distribution claim in the amount of $934,787.00 and any remaining balance of the lump sum DSO payments in the amount of $502,660.00, are non-dischargeable debts and shall be excepted from discharge under the terms of the Plan and any Confirmation Order, in accordance with Sections 523(a)(5), 523(a)(15), and 1192(2) of the Bankruptcy Code. Ms. Sampaio is expressly excepted from the injunction and release language contained in Sections C, D, and E of Article VI of the Plan solely with respect to any and all debts or obligations owed to Ms. Sampaio arising out of or under the Amended Dissolution Judgment, as such debts and obligations are non-dischargeable under Sections 523(a)(5), 523(a)(15), and 1192(2) of the Bankruptcy Code.

6.     **Disbursing Agent**.  Under 11 U.S.C. § 1194(b), except as otherwise provided in the Plan or the Confirmation Order, the Plan Trustee shall make payments pursuant to the Plan Trust Agreement.

7.     **Effect of Confirmation Order on Plan**.  The failure to reference or address all or part of any particular provision of the Plan herein has no effect on the validity, binding effect, or enforceability of such provision and such provision has the same validity, binding effect, and enforceability as every other provision of the Plan. To the extent that any inconsistencies exist between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

8.     **Service of Confirmation Order.**  The Subchapter V Trustee is directed to serve a copy of this Order on all parties and file a certificate of service within five (5) days of the entry of this Order.

9.     **Documents Required to Effectuate Plan.**  The Debtor is authorized and directed to execute any and all documents reasonably required to effectuate the provisions of the Plan or prior Orders of this Court.

10.    **Discharge of the Subchapter V Trustee.** Under 11 U.S.C. § 1183, the service of the Subchapter V Trustee in the case shall terminate when the Plan has been substantially consummated, except that the United States trustee may reappoint a trustee as needed for performance of duties under § 1183(b)(3)(C) and § 1185(a). Not later than 5 days after the Plan is substantially consummated, the Subchapter V Trustee shall file with the Court and serve on the Debtor, the United States trustee, and all parties in interest notice of such substantial consummation.

11.    **Jurisdiction.**  The Bankruptcy Court retains jurisdiction to, without limitation:

a.    Resolve issues with respect to the Debtor's substantial consummation of the Plan and to the extent the Debtor seeks to amend or modify the Plan;

b.    Resolve issues with respect to the Plan Trust and the rights and obligations thereunder;

c.    Resolve any motions, adversary proceedings, or contested matters, that are pending as of the date of substantial consummation;

d.    Adjudicate objections to claims and administrative expense applications;

e.    Resolve disputes with respect to any and all injunctions created as a result of confirmation of the Plan;

f.    Adjudicate modifications of the plan under 11 U.S.C. § 1193;

g.    Review and consider issues associated with the Debtor's final report and entry of final decree, and to enter a final decree; and

h.    Enter such orders as the Court deems necessary or appropriate with respect to enforcement of the Plan and the Plan Trust.

### # #

Submitted by:

Linda Leali, Esq.
Subchapter V Trustee
2525 Ponce De Leon Blvd., Suite 300
Coral Gables, FL 33134

Linda Leali, Esq. must serve a copy of the signed order on all parties served with the motion and must file with the court a certificate of service conforming with Local Rule 2002-1(F).

## TRUST AGREEMENT

This Trust Agreement (the "***Trust Agreement***"), is made and entered into this ___ day of

_____, 2023, by and between **HARRY BECK GREENHOUSE** (the "***Debtor***"), in the

chapter 11 bankruptcy proceeding, styled *In re Harry B. Greenhouse*, Case No. 21-12844-RAM,

pending in the United States Bankruptcy Court for the Southern District of Florida, Miami Division

(the "***Bankruptcy Court***") and **LINDA M. LEALI**, not individually but solely in her capacity as

trustee hereunder (the "***Trustee***").[1]

WHEREAS, by Order dated _____, 2023 [ECF #___] (the "***Confirmation***

***Order***"), the Bankruptcy Court confirmed the Debtor's Revised Fourth Amended Plan of

Reorganization of the Debtor, dated December ___, 2023, proposed by the Debtor pursuant to

chapter 11 of title 11, United States Code (the "***Bankruptcy Code***"). The Plan of Reorganization

in the form approved pursuant to the Confirmation Order, is hereinafter referred to as the "***Plan***",

whose terms are incorporated herein by reference;

WHEREAS, the Plan provides for the creation of a trust (the "***Trust***") for the benefit of the

holder(s) of Allowed Administrative Expense Claims, Class 2 Allowed Priority Claims, Class 3

Allowed General Unsecured Claims, Class 4 Allowed General Unsecured Claims with a Value

Less than $15,000.00, and Class 6 Equity Interests of the Debtor and Class 7 Greenhouse Exit

Financing Claim ("***Exit Financing***") due to Lee Greenhouse and Flora Lazar (the "***Lenders***" and

with the other beneficiaries, the parties are collectively referred to as the "***Trust Beneficiaries***" or

"***Beneficiaries***") pursuant to the terms of the Plan;

WHEREAS, immediately upon confirmation of the Plan, the Debtor shall cause all of his

investment assets as defined by the March 30, 2023 order [ECF #676] attached hereto as Exhibit

---

[1] Capitalized terms not defined herein shall have the meaning as set forth in the Plan.

"A" (the "***Trust Assets***") to be transferred into the Trust, subject to the terms and conditions set forth herein; and

WHEREAS, all income, dividends, distributions (whether in Cash or In Kind) earned by the Trust on account of the Trust Assets (the "***Trust Income***") thereon remaining after the satisfaction of all trust expenses and liabilities shall be used solely for the purpose of discharging the legal obligations of the Debtor's Estate to the Trust Beneficiaries pursuant to the Plan and any associated expenses incurred in connection with administration of the Trust.

NOW, THEREFORE, pursuant to the Plan and in consideration of the promises, mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

### ARTICLE I
### DECLARATION OF TRUST

1.      **Purpose of the Trust**. The Debtor and the Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the Bankruptcy Code, applicable tax statutes, rules and regulations, hereby constitute and create the Trust for the purpose of satisfying the Debtor's Beneficiaries and confirming a bankruptcy plan of reorganization. In particular, the Trust, through the Trustee, (i) shall receive and accumulate any and all Trust Income earned from the Trust Assets since the execution of the Updated Terms Sheet,[2] (ii) may liquidate any Trust Assets in order to compensate for any shortfall of the Liquidation Value,[3]; (iii) may prosecute, abandon, settle and/or

---

[2] *See* "Exhibit A" of the *Debtor's Second Agreed Motion to Extend Deadline to Seek Reconsideration of Order Conditionally Converting the Case* [ECF #756] (the "***Updated Terms Sheet***").

[3] The ***Liquidation Value*** is the amount of $1,315,703.00, as set forth on page 6 of the Updated Terms Sheet.

defend any claims or causes of action (the "**Actions**") related to the Trust Assets; (iv) shall file tax returns for the Trust and pay any Federal, State or other taxes that may be due and owing by the Trust, (v) shall make distributions to the Beneficiaries in accordance with the terms of the Plan and this Trust Agreement, and (vi) shall perform all actions required under the Plan and take such steps as are reasonably necessary to accomplish such purpose, all as more fully provided in, and subject to the terms and provisions of the Plan, the Confirmation Order and this Trust Agreement. The Trust shall not have authority to engage in a trade or business, and no portion of the Trust Assets shall be used in the conduct of a trade or business, except as is reasonably necessary to effectuate the terms and conditions of the Plan.  For the avoidance of doubt, the parties agree that the Trust is not, and should not be treated, as a qualified settlement fund under Treasury Regulation § 1.468B-1.

      2.      **Name of the Trust**. The Trust established hereby shall be known as the "12844 Trust". In connection with the exercise of its powers, the Trustee may use such name or such variation thereof as she sees fit and may transact the business and affairs of the Trust in such name.

      3.      **Transfer of Assets to Create Trust**. The Debtor hereby grants, releases, assigns, transfers, conveys and delivers the Trust Assets to the Trust as of the Effective Date, to have and to hold unto the Trustee and her successors in trust for the benefit of the Beneficiaries and to be applied as specified in the Plan, Confirmation Order and this Trust Agreement. To the extent required, the Debtor shall cause the Trust Assets to be transferred to the Trust. Debtor also shall cause all distribution notices, capital account statements, and other communications received by Debtor on account of the Trust Assets (the "**Trust Assets Investment Information**") to be provided to the Trustee. To the extent any Trust Asset Investment Information is delivered to Debtor and not the Trustee, Debtor shall provide such information to the Trustee within thirty (30) days of

receipt. To the extent Debtor has not received any Trust Asset Information which he has reason to believe should have been provided, or which he has reason to believe was already provided to other investors in the investments underlying the Trust Assets, Debtor shall diligently assist the Trustee in promptly obtaining such Trust Asset Information. Upon the transfer of the Trust Assets to the Trustee, and except as otherwise provided herein, such assets shall become Trust Assets and the Debtor shall retain no interest in or control over such Trust Assets. On the Effective Date, the Debtor shall execute and deliver or cause to be executed and delivered to or upon the order of the Trustee all such documents, in recordable form where necessary or appropriate, and the Debtor shall take or cause to be taken such further or other action, as the Trustee may deem appropriate, to vest or perfect in or confirm to the Trustee, or upon the order of the Trustee, title to and possession of all of the Trust Assets. Any and all costs, fees and taxes incurred in connection with the transfer of the Trust Assets to the Trust shall be borne solely by the Debtor. In the event the Trust Assets are not transferred to the Trust within 30 days, the Trustee shall submit an application to the Court requesting an order to show cause ("***OSC***") why any party responsible for the Trust Assets not being timely transferred to the Trust ("***Responsible Parties***") should not be held in contempt of court. The Trustee shall request that the Court order the Responsible Parties to appear 14 days after the issuance of the OSC and file a response to the OSC within 7 days of the OSC's issuance.

4.     **Acceptance by Trustee**. The Trustee hereby accepts (a) the appointment to serve as Trustee; (b) the transfer of the Trust Assets on behalf of the Trust; and (c) the trust imposed on her by this Trust Agreement. The Trustee agrees to receive, hold, administer and distribute the Trust Assets and the Trust Income, if any, pursuant to the terms of the Plan, Confirmation Order and this Trust Agreement.

4

## ARTICLE II
## TRUSTEE – GENERALLY

**1.    Appointment**. The initial Trustee shall be Linda M. Leali.

**2.    Term of Service**. The Trustee shall serve until (a) the termination of the Trust in accordance with Article IX of this Trust Agreement, or (b) the Trustee's resignation, death or removal in accordance with this Trust Agreement.

**3.    Services**. The Trustee shall be entitled to engage in such other activities as she deems appropriate which are not in conflict with the Plan, Confirmation Order, this Trust Agreement, or the interests of the Beneficiaries. The Trustee shall devote such time as is necessary to fulfill all of her duties as Trustee.

**4.    Resignation, Death or Removal of Trustee**. The Trustee may resign upon application to the Bankruptcy Court for good cause shown. The Trustee may also be removed by the Bankruptcy Court upon application for good cause. "Cause" for removal of the Trustee shall include negligence, fraud, wrongful action or inaction in the performance of her duties. Upon the resignation, death or removal of the Trustee, the Debtor, in consultation with the United States Trustee, and subject to the written consent of creditor(s) representing a majority of the dollar amount of allowed claims, shall, with Bankruptcy Court approval, designate another person as a successor Trustee, and thereupon such successor, without any further action, shall become fully vested with all of the rights, powers, duties and obligation of his, her or its predecessor.

**5.    Trust Continuance**. The death, resignation or removal of the Trustee shall not terminate the Trust or revoke any existing agency (other than any agency of such Trustee as a Trustee) created pursuant to this Trust Agreement or invalidate any action theretofore taken by the Trustee. By accepting the position as Trustee, any successor Trustee agrees that the provisions of

this Trust Agreement shall be binding upon and inure to the benefit of such successor Trustee and all his, her or its successors and/or assigns.

6.     **Compensation and Expenses of Trustee**. The Trustee shall be entitled to compensation in accordance with Section 326 of the Bankruptcy Code.

7.     **Retention of Professionals**. The Trustee may retain and engage such professionals, consultants and persons as may be necessary to carry out its duties under this Trust Agreement, subject to Bankruptcy Court approval, including, without limitation, any law firm of which such Trustee is a partner or otherwise affiliated from time to time (the "***Trustee's Professionals***"). The Trustee's Professionals may only be paid from Trust Income to the extent there are sufficient funds from which to make such payments, and the Trustee shall not be personally liable to any of the Trustee's Professionals for any unpaid invoices or claims for services rendered.

8.     **Court Approval for Payment**. The Trustee shall seek Bankruptcy Court authorization before the final payment of any fees and expenses to the Trustee or Trustee's Professionals, by the filing of final fee application in the Bankruptcy Court.

## ARTICLE III
## POWERS AND LIMITATIONS OF TRUSTEE

1.     **General Powers of Trustee**. In connection with the administration of the Trust, except as otherwise set forth herein, the Trustee is authorized to perform only those acts necessary and desirable to accomplish the purposes of the Trust. The Trust shall succeed to all of the rights of the Debtor necessary to protect, conserve and manage all Trust Assets. Subject to the limitations set forth in this Trust Agreement, the Plan and the Confirmation Order, the Trustee may exercise all powers granted hereunder related to, or in connection with, the collection, prosecution, liquidation, and distribution to the Beneficiaries, of the Trust Assets that are not inconsistent with

6

the Plan and this Trust Agreement. Without limiting, but subject to, the foregoing, the Trustee shall be expressly authorized:

(a)     To open and maintain bank accounts on behalf of or in the name of the Trust, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Trust.

(b)     To receive, conserve and manage the Trust Assets.

(c)     To hold legal and/or beneficial title to any and all Trust Assets.

(d)     Subject to the applicable provisions of the Plan, to prosecute, collect and liquidate the Trust Assets.

(e)     Make decisions regarding the retention or engagement of Trustee's Professionals and to pay, from the Trust Assets and the proceeds thereof, the fees and charges incurred by the Trust and the fees and expenses of Trustee's Professionals, as well as the disbursements, expenses or related support services relating to the implementation of the Plan and performance by the Trustee of its duties under this Trust Agreement.

(f)     To pay all lawful, expenses, debts, taxes, charges and liabilities of the Trust.

(g)     To wind down the affairs of the Trust including the filing of final tax returns, if applicable, establish any administrative reserves necessary to close the Trust and make all Distributions to the Beneficiaries provided for or contemplated by the Plan.

(h)     To withhold from the amount distributable to any Beneficiary such amount as may be sufficient to pay any tax or other charge which the Trustee has determined, in her sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof. In the exercise of her discretion and judgment,

the Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section.

(i)     To enter into any agreement or execute any document required by or consistent with the Plan and perform all obligations thereunder.

(j)     Except as otherwise set forth in this Trust Agreement, to have exclusive power to prosecute and/or settle all causes of actions including, without limitation, Avoidance Actions or any other causes of action or counterclaims as described in the Plan and Disclosure Statement (collectively, the "**_Actions_**") and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of competent and appropriate jurisdiction and voluntarily participate as a party or otherwise in any administrative proceeding, arbitration, mediation, or other nonjudicial proceeding and litigate or settle such Actions on behalf of the Trust, and pursue such actions to settlement or final order, all in accordance with the terms of this Trust Agreement.

(k)     To hold any unclaimed Distributions or payment to a Beneficiary in accordance with this Trust Agreement, the Confirmation Order and the Plan.

(l)     To implement and/or enforce all provisions of the Plan.

(m)     To collect and liquidate all Trust Assets pursuant to, and not inconsistent with, the Plan, the Confirmation Order and this Trust Agreement and to ultimately close the Chapter 11 Case.

(n)     Exercise such rights of setoff as the Debtor or the Estate may have had against any Beneficiary and/or seek Court approval of such exercise.

(o)     Voluntarily engage in arbitration or mediation with regard to any dispute related to this Trust.

8

(p)    To (i) seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file, if necessary, any and all tax information returns required with respect to the Trust, (iii) make tax elections by and on behalf of the Trust and (iv) pay taxes, if any, payable by the Trust.

(q)    To make all distributions ("**_Distributions_**") to holders of Allowed Claims provided for or contemplated by the Plan.

(r)    Resolve issues pertaining to the retention or disposal of the Trust's administrative and business records.

(s)    To perform any other actions or duties required to be performed by the Trustee pursuant to the provisions of the Plan and/or Confirmation Order.

Notwithstanding anything herein to the contrary, the Trustee's powers as stated herein shall be subject to the limitations set forth in the Plan. Any and all actions taken by the Trustee inconsistent with the Plan shall be void _ab initio_ and shall be cause for the Trustee's removal under Section 2.4 of this Trust Agreement.

**2.**    **Limitations on the Trustee**. Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not do or undertake any of the following:

(a)    Take any action in contravention of the Plan, the Confirmation Order or this Trust Agreement.

(b)    Take any action that would significantly jeopardize treatment of the Trust as a "Trust" for federal income tax purposes.

(c)    Grant liens on any of the Trust Assets.

(d)    Guaranty any debt.

(e)    Loan Trust Assets to the Trustee.

9

(f)    Purchase Trust Assets from the Trust.

(g)    Transfer Trust Assets to another trust with respect to which the Trustee serves as trustee.

**3.    Sale of Assets**. To the extent that the Trustee determines in her business judgment and consistent with her fiduciary obligations that it is necessary to sell any one or more of the Trust Assets to maximize the value received by the Beneficiaries, the Trustee shall provide notice to the Beneficiaries. Any such sale shall be subject to the approval of the Bankruptcy Court.  For the avoidance of doubt, the Trustee shall incur no liability in connection with her determination to sell or not sell any of the Trust Assets, provided she obtains the requisite approval of the Bankruptcy Court.

**4.    Trustee Conflicts of Interest**. If the Trustee determines, in the exercise of the Trustee's discretion, that she has a material conflict of interest with respect to any matter, the Trustee, after notice to the United States Trustee, may request the Bankruptcy Court to approve the Trustee's choice of a designee to act on behalf of the Trust solely with respect to such matter, with such designee's authority to act on behalf of the Trust to terminate upon the matter's conclusion.

**ARTICLE IV**
**LIABILITY OF TRUSTEE**

**1.    Trustee's Duties of Care; Exculpation**. Neither the Trustee nor any partner, director, officer, affiliate, employee, employer, professional, agent or representative of the Trustee ("***Indemnified Persons***") shall be personally liable in connection with the affairs of the Trust to any Person, including any Beneficiary of the Trust, or to the Trust, except for acts or omissions of the Indemnified Person that constitute fraud, willful misconduct, or gross negligence. Persons dealing with Indemnified Persons in connection with the Trust, or seeking to assert claims against

the Trust, shall have recourse only to the Trust Assets to satisfy any liability incurred by the Indemnified Persons to such persons in carrying out the terms of this Trust Agreement, except for acts or omissions of the Indemnified Persons that constitute fraud, willful misconduct or gross negligence.

**2.      No Liability for Acts of Predecessor Trustees**. No successor Trustee shall be in any way liable for the acts or omissions of any predecessor Trustee unless a successor Trustee expressly assumes such responsibility.

**3.      Reliance by Trustee and Directors on Documents, Mistake of Fact or Advice of Counsel**. Except as otherwise provided in this Trust Agreement, the Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Trustee, as the case may be, to be genuine and to have been presented by an authorized party. The Trustee shall not be liable if it acts based on a mistake of fact before having actual knowledge of an event or for any action taken or suffered by such person if such person has reasonably relied upon the advice of counsel or other professionals engaged by the Trustee in accordance with this Trust Agreement.

**ARTICLE V**
**DUTIES OF TRUSTEE**

**1.      General**. The Trustee shall have all duties specified in the Plan, the Confirmation Order and this Trust Agreement as being the responsibility of the Trustee.

**2.      Books and Records**. The Trustee shall maintain, in respect of the Trust, books and records relating to the Trust Assets, Trust Income, and expenses of and claims against or assumed by the Trust, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof. Except as expressly provided in this Trust Agreement,

11

the Plan or the Confirmation Order, nothing in this Trust Agreement is intended to require the Trustee to file any accounting or seek approval of any court with respect to the administration of the Trust, or as a condition for making any payment or Distribution out of the Trust Assets. Upon reasonable written request, any Beneficiary who has executed the Stipulated Protective Order [ECF #205] may obtain copies of the books and records of the Trust. Upon such request by a Beneficiary, the Trustee shall provide the Beneficiary copies of all requested books and records within thirty (30) days.

3.     **Trust Asset Records**. The Trustee shall obtain and maintain all records and information which the investment assets underlying the Trust Assets provide to investors similarly situated to Debtor, including capital account statements, distribution letters, investor updates, and financial statements (as applicable) for the investments underlying each Trust Asset ("***Trust Asset Records***").The Trustee shall, as necessary, require the cooperation of Debtor in obtaining such information, which Debtor agrees to provide under the terms of this Trust Agreement. Upon reasonable written request, any Beneficiary who has executed the Stipulated Protective Order [ECF #205] may obtain copies of any Trust Asset Records. Upon such request by a Beneficiary, the Trustee shall provide the Beneficiary copies of all requested books and records within thirty (30) days.

4.     **Interim Reports to Court**. Beginning with a date which is fifteen (15) days after the end of the first full month following the Effective Date and, continuing on the fifteenth (15th) day after the end of each succeeding quarter until the final date distributions are made ("***Final Distribution Date***"), the Trustee will file written reports (the "***Trustee Accounting Reports***") with the Bankruptcy Court. The Trustee Accounting Reports, subject to any confidentiality obligations, will provide information on collections and disbursements, administrative costs, settlements, cash

12

on hand or deposit and the Trustee's ongoing efforts to administer the Trust. To the extent any confidentiality obligations would require Trustee to file the Trustee Accounting Reports with redactions or to omit from the public filing any material information regarding the Trust Assets, the Trustee shall file unredacted versions of the Reports under seal, with copies of unredacted versions of the Reports provided to Beneficiaries, who have executed the Stipulated Protective Order [ECF # 205].

5.      **Final Report to Court Prior to Final Distribution**. Before making the final distribution, the Trustee shall file a written report with the Bankruptcy Court (which report shall constitute the final accounting of the Trust) showing the assets administered, the distributions made by the Trustee and the Final Distributions to be made by the Trustee (the "***Final Trustee Accounting Report***"). The Trustee shall provide notice by regular, first-class mail to all Beneficiaries of the filing of the Final Trustee Accounting Report. Any Beneficiary who fails to file and serve on the Trustee a written objection to any Trustee Accounting Reports or to the Final Trustee Accounting Report within thirty (30) days after such report or account is filed shall be deemed to have assented thereto and approved the contents thereof. Any objection to any report or accounting shall be resolved by the Bankruptcy Court. If no objection is filed to the Final Trustee Accounting Report within the time frame set forth above, then, upon making the Final Distribution in the manner set forth in the Final Trustee Accounting Report, the Trustee and all Trustee Professionals shall be: (a) fully discharged of their duties hereunder and under the Trust Agreement; and (b) fully discharged and released from all duties, liabilities and obligations of every kind and nature to the Beneficiaries, except as is expressly set forth in this Trust Agreement to the contrary; provided, however, that the foregoing shall not relieve the Trustee from liability

13

for gross negligence, fraud, willful misconduct, self-dealing or breach of fiduciary duty in the conduct of its duties as set forth herein.

6.    **Final Accounting of Trustee Upon Her Termination**. Within thirty (30) days after a Trustee's announced resignation or removal, such Trustee or former Trustee, as the case may be, shall render a final accounting (the "***Outgoing Trustee's Final Accounting***") containing at least the following information:

(a)    A description of the Trust Assets as of the last day of such Trustee's service hereunder;

(b)    A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Trust and the Trust Assets during the Trustee's term of service, including their source and nature;

(c)    Separate entries for all receipts of principal and Trust Income;

(d)    The ending balance of all Trust Assets as of the date of the Trustee's accounting, including the cash balance on hand and the name and location of the depository where it is kept; and

(e)    All known liabilities owed by the Trust.

The Outgoing Trustee's Final Accounting shall be filed and presented to the Bankruptcy Court for approval. The United States Trustee shall give notice that the Outgoing Trustee's Final Accounting has been filed and an opportunity to have a hearing on the approval of the Outgoing Trustee's Final Accounting and the discharge of the Trustee.

## ARTICLE VI
## DUTIES OF DEBTOR

1.    **Debtor's Duties to the Trust**. Debtor agrees to make good faith efforts to cooperate with the Trustee in carrying out her duties to the Trust, including but not limited to:

(a)     Causing the transfer of Trust Assets to the Trust;

(b)     Causing all Trust Assets Investment Information to be provided to the Trustee as set forth in this Agreement; and

(c)     Ensuring that all distributions (whether in cash or in-kind) received by the Debtor from the investments listed in Exhibit A are distributed to the Trust.

2.     **Debtor Representation.** Debtor represents that to the best of his knowledge, information and belief, there are no amounts owed by the Debtor on account of the Trust Assets ***other than*** an unpaid capital contribution in the approximate amount of $3,000 owed by Debtor in connection with his investment in 1313 Ventures, which is one of the Trust Assets.

## ARTICLE VII
## BENEFICIARIES

1.     **Effect of Death, Incapacity or Bankruptcy of Beneficiary**. The death, incapacity or bankruptcy of a Beneficiary during the term of the Trust shall not operate to terminate the Trust, nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Trust Assets or for a petition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Trust Agreement or in the Trust.

2.     **Standing of Beneficiary**. Except as expressly provided in this Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Trustee) upon or with respect to the Trust Assets, provided however, that each Beneficiary shall be a third-party beneficiary of this Trust Agreement and shall be entitled to rely upon and enforce the provisions of this Trust Agreement consistent with its terms, including Section 11.8. Each Beneficiary shall continue to have all rights and remedies with respect to the

15

Trustee and Debtor as provided under the Bankruptcy Code.  For the avoidance of doubt, each Beneficiary's right to enforce the provisions of this Trust Agreement shall include the ability to seek to compel the Trustee to take (or refrain from taking) certain action; provided, however, that such Beneficiary shall explain the basis for its position, meet and confer with the Trustee, and make a good faith effort to resolve the issue amicably before initiating any legal proceeding. To allow such discussions to continue, unless the situation presents a risk of immediate irreparable harm, no Beneficiary shall initiate any legal proceeding against the Trustee unless at least 30 days have elapsed since the Beneficiary first raised the issue to the Trustee.

3.    **Release of Liability by Beneficiary**. A Beneficiary shall not release the Trustee from any duty, responsibility, restriction or liability as to such Beneficiary that would otherwise be imposed under this Trust Agreement unless such relief is approved by Final Order of the Bankruptcy Court.

## ARTICLE VIII
## DISTRIBUTIONS

1.    **Distributions from Trust Assets**. All Distributions of Trust Assets made by the Trustee to the Beneficiaries shall be made only in accordance with the Plan, the Confirmation Order and this Trust Agreement, and only to the extent that the Trust has sufficient Trust Income from which to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order and this Trust Agreement. Any Distribution made by the Trustee in good faith and if required hereby shall be binding and conclusive on all interested parties.

2.    **Distributions; Withholding**. To the extent that sufficient funds are contained in the Trust from which to make a Distribution, the Trustee may make Distributions on an interim basis to the Beneficiaries from all net cash Trust Income and all other cash held in the Trust; provided, however, that the Trustee may retain such amounts (a) as are reasonably necessary to

meet contingent liabilities of the Trust, (b) to pay reasonable administrative expenses including, without limitation, the compensation to and reasonable, actual and necessary costs and expenses of the Trustee, including, without limitation, the fees and expenses of Trustee's Professionals, in connection with the performance of the Trustee's duties in connection with this Trust Agreement, and tax liabilities of the Trust, and (c) to satisfy all other liabilities incurred or assumed by the Trust (or to which the Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order and this Trust Agreement. All such Distributions shall be made as provided, and subject to any withholding, in this Trust Agreement, the Plan or the Confirmation Order. Additionally, the Trustee may withhold from amounts distributable to the Beneficiaries any and all amounts, determined in the Trustee's reasonable sole direction, to be required for any trust expense or by any law, regulation, rule, ruling, directive or other governmental requirement. In no event shall the Trustee be required to make any Distribution if the same would be administratively burdensome or unreasonably expensive in relation to the dollar amount of the total cash to be distributed.

3.      The Trustee shall make quarterly distributions of all Trust Income, including Debtor's cash on hand on the Effective Date after receipt of the Exit Financing, net of expenses and tax obligations of the Trust, pursuant to the following priority of distribution:

(a)      First, towards the payment of any outstanding Allowed Administrative Claims as of the Effective Date;

(b)      Second, towards the payment of any outstanding Class 2 Priority Claims;

(c)      Third, towards the payment of Class 3 and Class 4 unsecured claims (on a *pro rata* basis according to the size of their claims) up to the Liquidation Value;

(d)      Fourth, towards the Unsecured Exit Financing Claim as defined in the Plan (of the Class 7 Greenhouse Exit Financing);[4]

(e)      Fifth, if the Liquidation Value has been met and the Class 7 Greenhouse Exit Financing Claim has been paid in full, any distributions shall be applied towards the payment of General Unsecured Claims (on a *pro rata* basis according to the size of their claims);

(f)      After the Liquidation Value has been met and the Class 7 Greenhouse Exit Financing Claim has been paid in full, any distributions in excess of the Liquidation Value shall be made to holders of the General Unsecured Claims (on a *pro rata* basis according to the size of their claims).

## ARTICLE IX
## TERMINATION OF TRUST

1.      **Maximum Term**. The Trust shall commence as of the Effective Date and shall continue and remain in full force and until such time as the Trustee determines in her business judgment and consistent with her fiduciary obligations that the Trust no longer contains any Investment Assets and/or that the any Investment Assets remaining in the Trust no longer have any value.

2.      **Distribution Upon Termination**. Upon the termination of the Trust, and following disbursement of final distributions to the Beneficiaries, including a reasonable amount of time not to exceed sixty (60) days after termination for the Trustee to sell in-kind distributions and distribute the proceeds to the Beneficiaries, the Trustee shall distribute the remaining Trust Assets

---

[4] On September 12, 2023, the parties to the Updated Terms Sheet entered into that certain *First Amendment to Binding Plan Terms Sheet Dated August 24, 2023* (the "***First Amendment***") wherein the parties agreed that the Lenders could reduce the Exit Financing by an amount equal to the attorneys' fees incurred by Lenders in connection with the services provided to Lenders by its Additional Trust Agreement Counsel not to exceed $15,000.

and any Trust Income remaining in the Trust in accordance with the Plan, Confirmation Order and this Trust Agreement.

     **3.**     **Winding Up and Discharge of the Trustee**. For the purposes of winding up the affairs of the Trust at its termination, the Trustee shall continue to act as Trustee until her duties have been fully discharged including, without limitation, the filing of all tax returns and any other filings or reports with the appropriate state or federal regulatory authorities and all time periods and all opportunity for such authorities to challenge such final tax returns have expired. After doing so, the Trustee, her agents and employees shall have no further duties or obligations hereunder, except as required by this Trust Agreement, the Plan, or applicable law concerning the termination of a trust. Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, her agents and employees of any further duties, discharging the Trustee and releasing its bond, if any.

**ARTICLE X**
**ADMINISTRATIVE EXPENSES**

     **1.**     **Trust Administrative Expenses**. The cost and expenses of the Trust, including, without limitation, the compensation to and the reimbursement of reasonable, actual and necessary costs, fees and expenses of the Trustee, including, without limitation, the fees, costs and expenses of the Trustee's Professionals, in connection with the performance of the Trustee's duties in connection with this Trust Agreement, and any taxes and costs associated with tax filings, shall be paid from the Trust Assets.

     **2.**     At the time of making final distributions to the Beneficiaries, the Trustee may reserve amounts from the Trust Assets, that the Trustee deems necessary, to wind down the Trust and close the Bankruptcy Case. Any funds held by Trustee at the close of the Bankruptcy Case shall be distributed to the Beneficiaries, unless the Class 4 and 5 unsecured creditors have already

19

been paid in full. In the unlikely event that creditors receive 100 cents on the dollar of their claims, then the Debtor will receive the Trust excess.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

1.      **Amendments**. The Trustee may propose to the Bankruptcy Court the modification, supplementation or amendment of this Trust Agreement; provided, however, that no such amendment shall permit the Trustee to act in any manner which is inconsistent with the Plan; provided, further, that the Trustee may not amend this Agreement without prior Court approval. Such modification, supplementation or amendment shall be in writing and filed with the Bankruptcy Court. No modification, supplementation or amendment of this Trust Agreement shall be effective except upon a Final Order of the Court.

2.      **Waiver**. No failure by the Trustee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

3.      **Cumulative Rights and Remedies**. The rights and remedies provided in this Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

4.      **Irrevocability**. The Trust is irrevocable.

5.      **Relationship to the Plan**. The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and, therefore, this Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Trust Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order shall control.

6.    **Division of Trust**. Under no circumstances shall the Trustee have the right or power to divide the Trust unless authorized to do so by the Bankruptcy Court.

7.    **Governing Law**. This Trust Agreement shall be governed and construed in accordance with the laws of the State of Florida, without giving effect to rules governing the conflict of laws.

8.    **Retention of Jurisdiction**. Notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, this Trust Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Trustee or any professional retained by the Trustee or the Trust, in each case in its capacity as such. Each party to this Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Trust Agreement or of any other agreement or document delivered in connection with this Trust Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens* or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that (i) any action to enforce, interpret or construe any provision of this Trust Agreement will be brought only in the Bankruptcy Court and (ii) all determinations, decisions, rulings and holdings of the Bankruptcy Court shall be final and non-appealable and not subject to reargument or reconsideration. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, to be sent to its address set forth in Section 11.12 of this Trust Agreement as each party

21

may designate from time to time by notice given in the manner provided above, of any process in any action to enforce, interpret or construe any provision of this Trust Agreement.

9.      This Trust Agreement was drafted with input from the Debtor, Trustee, Olivia Sampaio, and the Lenders through their Additional Trust Agreement Counsel as defined in the First Amendment. The agreement shall not be construed against any one party.

10.      **Severability**. In the event that any provision of this Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

11.      **Limitation of Benefits**. Except as otherwise specifically provided in this Trust Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

12.      **Notices**. All notices, requests, demands, consents and other communication hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person or by facsimile with an electromechanical report of delivery or if sent by overnight mail or by registered or certified mail with postage prepaid, return receipt requested, to the following addresses.

If to the Debtor:

Harry B. Greenhouse
215 South Dixie Highway
Apt. A1406
Miami, FL 33133

With a copy to:

Buchanan Ingersoll & Rooney, P.C.
Two South Biscayne Blvd., Suite 1500
Miami, FL 33131
Attn: Nicole Grimal Helmstetter, Esq.

If to the Trustee:

Linda M. Leali
2525 Ponce de Leon Blvd., Suite 300
Coral Gables, FL 33134

If to Lenders:

Lee Greenhouse and Flora Lazar
P.O. Box 106
Taconic, Connecticut 06079

With a copy to:

Richard A. Saldinger
Landsman Saldinger Carroll, PLLC
161 N. Clark Street, Suite 1600
Chicago, Illinois 60601

If to the Beneficiaries:


[*The contact information included in creditor claims forms and counsel or record.*]

Notice of any application to the Bankruptcy Court shall also be provided to the Office of

the United States address as follows:

Office of the United States Trustee:
51 S.W. First Avenue, Suite 1204
Miami, Florida
Attn: Steven Schneiderman, Esq.

23

The parties may designate in writing from time to time other and additional places to which notices may be sent. All demands, requests, consents, notices and communications shall be deemed to have been given (a) at the time of actual delivery thereof, (b) if given by certified or registered mail, five (5) business days after being deposited in the United States mail, postage prepaid and properly addressed, or (c) if given by overnight courier, the next business day after being sent, charges prepaid and properly addressed.

13.    **Further Assurances**. From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Trust Agreement, and to consummate the transactions contemplated hereby.

14.    **Integration**. This Trust Agreement, the Plan and the Confirmation Order constitute the entire agreement with, by and among the parties, and there are no representations, warranties, covenants or obligations except as set forth herein, in the Plan and in the Confirmation Order. This Trust Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise provided herein, the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

15.    **Successors or Assigns**. The terms of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

16.    **Interpretation**. The enumeration and section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or

interpretation of this Trust Agreement or of any term or provision hereof. Unless the context otherwise requires, whenever used in this Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations and corporations. The words "herein," "hereby," and "hereunder" and words with similar import, refer to this Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

17.    **Counterparts**. This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

## ARTICLE XII
## CONCERNING THE BENEFICIARIES

1.    **Requirement of Undertaking**. The Trustee may request any court to require, and any court may in its discretion require, in any suit against the Trustee for any action taken or omitted by the Trustee, that the filing party litigant in such suit post an undertaking to pay the Trustee's costs of such suit, and such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant.

2.    **No Assignment**. Except as otherwise provided herein, the obligations, duties or rights of the Trustee under this Agreement shall not be assignable, voluntarily, involuntarily or by operation of law, and any such attempted assignment shall be void.

3.    **Trust Year**. The Trust will utilize the 12 month period selected by the Trustee as its year for tax and financial accounting purposes. This may be the calendar year.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

1.      **Indemnification**. The Trust shall indemnify and hold the Trustee harmless from and against any damages, costs, claims and other liabilities incurred in connection with her respective duties and responsibilities hereunder, other than those damages, costs, claims and other liabilities that result from her respective gross negligence, self-dealing, breach of fiduciary duty or willful misconduct.

2.      **Bond**. The Trustee shall post an initial bond in favor of the Trust in an amount equal to $100,000. The cost of such bond is paid by the Trust.  This bond shall be adjusted at the beginning of each quarter beginning April 1, 2024 to an amount that is no less than 150% of the cash in the Trustee's account. Notwithstanding the foregoing, the bond shall be no less than $100,000.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Trust Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

"Debtor"

_____
Harry Beck Greenhouse

"Trustee"

_____
Linda M. Leali

26

**Agreement**

December 19, 2023

The Debtor shall transfer no later than December 22, 2023 the amount of $164,000 to the trust account of AlignX Law.

The Debtor will invoice no later than December 20th Skrill/Paysafe for all outstanding amounts owed. The Debtor will diligently pursue these amounts and other unpaid amounts previously invoiced to seek to receive the funds no later than December 27, 2023. The Debtor will provide copies of these invoices and correspondence to the signatories below.

On December 28, 2023, the Debtor will transfer to the Trustee's account all amounts in his bank accounts, except for $12,000 which shall be used by the Debtor to pay Debtor's January 2024 monthly alimony obligation to Ms. Sampaio, to the extent those sums are available in the accounts.

In addition, to the extent Debtor receives payment from Skrill/Paysafe after December 28, 2023 on any invoices that were issued on or before December 20, 2023, those funds will be transferred to the Trust as part of Debtor's ongoing cooperation obligations.

Notwithstanding the foregoing, all investment distributions/income shall be turned over to the Trustee and are not part of the foregoing agreement.

Harry Greenhouse, Debtor _____

Polychain _____

Olivia Sampaio _____

Linda Leali, Trustee _____